UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | NO. 4:22-cr-00612-3 |
| | § | |
| JOHN RYBARCZYK | § | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO GOVERNMENT'S MOTION TO AUTHORIZE ALTERNATIVE VICTIM NOTIFICATION PROCEDURES.**

Defendant John Rybarczyk ("Rybarczyk") respectfully files this memorandum in opposition to the government's January 19, 2023 motion for Alternative Victim Notification (ECF No. 120) ("Notice Motion"), which seeks to use alternative victim notification procedures—namely, publication on an official Department of Justice website—to notify purported "crime victims," pursuant to the Crime Victims' Rights Act, 18 U.S.C. § 3771(d)(2) ("CVRA"). For the reasons set forth below, the government's Notice Motion should be denied.

### INTRODUCTION

It is axiomatic that criminal defendants have a constitutional right to an impartial jury under the Sixth Amendment as well as a due process right to a fair trial in which jurors base their verdict on the evidence produced in court and not on extrajudicial influences. *See Skilling v. United States*, 561 U.S. 358, 438 (2010). Yet in prosecuting this case the government relies on, "extrajudicial influences."

Specifically, at the time the charges against the Defendants were announced, multiple government offices issued press releases and publicized the charges on social media. The FBI Tweeted out that the Defendants "robbed investors" of "more than $100 million," implying that

1

some type of violent assault had been committed. *See* Exhibit A [FBI Tweet]. This inflammatory Tweet is strategically placed directly above an image of a person (presumably a robber) dumping a large quantity of bundled bills on a table, received 38 comments, 113 Retweets, 14 Quote and 319 likes, ensuring that it ricocheted around the prospective jury pool. Similarly, the DOJ released their own press releases, stating that the Defendants had "profited at least approximately $114 million from their scheme,"[1] even though, other than generically concluding that the "the defendants profited at least approximately $114 million from their scheme," the Indictment itself identified total gains of just under $*14 million* (less than $2 million/defendant). Moreover, the government's press releases and Tweets were picked up and amplified by both local and national media, including CNN,[2] CNBC,[3] NBC,[4] the Houston Chronicle,[5] and other outlets.[6]

The government urges the Court to let this publicity pile-on continue by allowing the creation of an official DOJ website that is designed to provide notice to stock market participants that they may have been victims of a crime. But to justify such further publicity, the government's Notice Motion radically expands the definition of "crime victim" to encompass *every* person who bought stock in *any* of the companies Defendants Tweeted about, regardless of whether the purchaser gained or lost money or even relied upon the Defendants' Tweets, and continues to

---

[1] https://www.justice.gov/opa/pr/eight-men-indicted-114-million-securities-fraud-scheme-orchestrated-through-social-media; https://www.justice.gov/usao-sdtx/pr/eight-men-indicted-114-million-securities-fraud-scheme-orchestrated-through-social.
[2] *See* https://www.cnn.com/2022/12/14/tech/sec-influencers-pump-and-dump/index.html.
[3] *See* https://www.cnbc.com/2022/12/14/sec-charges-social-media-influencers-in-alleged-100-million-fraud-scheme.html.
[4] *See* https://www.nbcnews.com/tech/tech-news/sec-says-social-media-influencers-used-twitter-discord-manipulate-stoc-rcna61673.
[5] *See* https://www.houstonchronicle.com/business/article/stock-gurus-charged-in-scam-17654489.php.
[6] *See* https://www.click2houston.com/news/local/2022/12/14/houston-area-influencers-among-8-indicted-for-114m-securities-fraud-scheme-orchestrated-through-social-media-doj/; https://www.khou.com/article/news/crime/pump-and-dump-scheme/285-88b5a2ec-3638-47e2-afc3-0a743350ca5f.

attack the Defendants' due process rights. This is not accurate, it is unfair, and it is highly prejudicial.

*First*, as the government recognizes, alternative victim notification is appropriate *only* in cases where it is "impracticable" to provide individualized notice to numerous potential victims. The government attempts to create "impractability" by constructing a proposed class of potential victims that is far broader than what is in the indictment. Put differently, the only way the government can try to show "impracticability" is to artificially inflate the pool of potential victims so that the government can show that it is "impracticable" to contact them. *Second*, even accepting the government's overbroad definition of victim, the government's generic allegations do not demonstrate that is impracticable to provide individualized notice to the alleged victims, as required by under the CVRA. 18 U.S.C. § 3771(d)(2). *Finally*, even if this Court finds that alternative notice procedures are warranted in this case, the government's proposed procedures—creating an official DOJ website labeling every stock purchaser as a victim—threaten Mr. Rybarczyk's right to a fair trial and an impartial jury. Accordingly, this Court should deny the government's Notice Motion. Alternatively, if the Court finds that alternative notification procedures are warranted, Mr. Rybarczyk requests that the Court modify the government's proposed procedures to protect his due process rights from undue prejudice.

## **ARGUMENT**

I. <u>The government's "crime victim" definition in the Notice Motion is wildly overbroad and highly prejudicial to Mr. Rybarczyk.</u>

   a. *To provide alternative notification, the government must prove that it is "impracticable" to notify victims by other means; the government attempts to justify such notification by significantly expanding the definition of "victim" to include every person who bought and sold a target security.*

3

As the name suggests, the Crime Victim Rights Act ("CVRA") applies only to crime victims. And the CVRA's definition of a crime victim is purposefully narrow and limited to those "directly and proximately harmed as a result of a federal offense." *See United States v. Schessel*, No. CR 22-0374 (ES), 2022 WL 17094777, at *3 n.3 (D.N.J. Nov. 21, 2022) (victim status under the CVRA requires the government to establish "but for" proximate causation"). Put differently, alternative victim notification under 18 U.S.C. § 3771(d)(2) is available *only* when the government demonstrates that the actual "number of crime victims makes it impracticable to accord" victims all of their rights. The government has not done so here, instead relying on an overly expansive definition of "victim" that appears to have been created solely to justify the alternative notice provisions sought here.

Specifically, although the government now argues that all market participants could be victims, the government's Indictment does not allege that the charged defendants were company insiders controlling the entirety of the float, or that the companies at issue in the Indictment were fake, thereby rendering *all* sales of a particular security to be fraudulent. Instead, the Indictment alleges that the Defendants "conspired and schemed to 'pump and dump' securities based on false and misleading information and material omissions about those securities that the Defendants published on social media platforms." ECF No. 120 at 2. The scheme as alleged by the government, which "targeted [defendants'] vast social-media followings on both Twitter" and Discord, consisted of posting "messages on social media platforms with false, positive information about the security—including as to, among other things, the defendants' position in the security, how long the defendants intended to hold the security, the defendants' view that the security would increase in price, and the price the security could reach—to induce other investors to buy the security and artificially drive up its price." *Id.* at 2-3. In short, the Indictment does not allege that

every purchaser of a target security is a crime victim; rather, pursuant to the Indictment, alleged crime victims are *only* those who purchased securities after relying on certain, limited Tweets of the Defendants.

Yet in demanding alternative victim notification here, the government does not limit "victimhood" to those directly and proximately harmed by the precise conduct as alleged in the Indictment. Instead, the government's Notice Motion significantly and improperly expands the definition of "victim" to include all "market participants that traded the various securities with which the Defendants executed their scheme throughout the relevant period in the Indictment." *Id.* at 4. The government even takes the approach that crime victims include "numerous market participants" who "*may have been affected* by Defendants' charged conduct." *Id.*

But simply being someone who purchased a certain security, or who "*may*" have been "affected" by certain "conduct," is not the same as being a "crime victim," *i.e.* someone who is "directly or proximately harmed" by a federal crime. 18 U.S.C. § 3771(e)(2)(A). Under the Notice Motion's nonsensical victim definition, *every* person who traded in a security—whether they gained or lost money, whether they viewed Defendants' Tweets or not, or whether they had even heard of any of the Defendants prior to charges being filed—is a "potential victim" requiring notification. The government employs this expansive definition of a crime victim to justify alternative victim notification, plainly stating that because of the "numerous market participants [that] may have been affected by Defendants' charged conduct," it is "impracticable for the United States to … identify and provide individualized notice to each potential" crime victim. ECF No. 120. at 4. This Court should reject the government's attempt to expand victimhood to include *every* market purchaser as contrary to the plain language found in both the CVRA and the Indictment.

That the government's attempt to expand victimhood here is unwarranted is demonstrated by evidence already produced by the government in discovery, which shows that many people *benefited* from Mr. Rybarczyk's alleged advice. For example:[7]



---

[7] These were public tweets from Rybarczyk's account re-produced in discovery and thereby not subject to the protective order, yet will be referred to by Bates number for the parties' convenience.
[8] DOJ-PROD-0000203202
[9] DOJ-PROD-0000203144



Obviously, these individuals may be "market participants," but they certainly are not "victims," despite the government's intent to recast them in this role. As such, the government's Notice Motion must be denied unless and until the government can show that it is impracticable to notify all potential victims, as defined by the CVRA and the Indictment's allegations, and not by the expansive definition employed in the Notice Motion.

    b. *The government's expanded definition of "crime victim" would highly prejudice Mr. Rybarczyk.*

As described, the government's media onslaught has already inflicted substantial damage on the Defendant's right to a fair trial and presumption of innocence. The proposed DOJ website, which would target "all market participants," takes this assault one step further.

In that regard, by creating an official government website characterizing all purchasers as "victims," people will then believe that, in fact, they *are* victims of various federal offenses, even if they suffered no cognizable injury and actually *gained* money from trading. This will prejudice

---

[10] DOJ-PROD-0000203109
[11] DOJ-PROD-0000203294

Mr. Rybarczyk because it will taint the prospective general jury pool against him and perhaps more importantly, hinder his lawyers' ability to prepare his defense through the interviewing of potential trial witnesses, who are now being trained by the DOJ to view themselves as crime victims. The presumption of innocence will mean little when there is a government website telling people every day that the Defendants are guilty—as the FBI so artfully did by Tweeting out that the Defendants "robbed investors" of more than $100 million—and that every person who bought or sold a target security is a crime victim.

The defense concerns are not just theoretical. In *United States v. Gallagher* (22-CR-0122-SDNY) the DOJ, together with the SEC, charged a similar fact pattern whereby a defendant was accused of engaging in a pump and dump scheme orchestrated on Twitter. The FBI, DOJ and SEC all put out various Tweets and press releases heralding the arrest, claiming that the Defendant made over a $1 million in profits.[12] Ultimately, the Defendant pled guilty to a single count Information with a total gain of just $21,000 receiving a sentence of home confinement. Moreover, the government conceded at sentencing that there were "no identifiable victims" of the offense and did not ask for any restitution. *See* 22-CR-0122-VEC at ECF No. 22 p. 18. Thus, far from being so convinced that there are an untold number of "victims" out there, prior experience in a similar case raises the significant question of whether there are any victims at all.

II.  The government failed to show that providing individualized notice to potential victims would be impracticable.

Regardless of which definition of "crime victim" the government employs, the government's motion should be denied because other than a few generic catch-all allegations, the

---

[12] https://www.justice.gov/usao-sdny/pr/stock-trader-arrested-and-charged-securities-fraud-using-his-twitter-account-operate.

8

motion fails to include any specific reasons as to why is it impracticable for the government to notify potential crime victims without the creation of a DOJ website.

In its motion, the government devotes a total of three sentences to explaining why it cannot provide individualized notice to each potential victim, arguing, generically, that because of the Defendants' "vast social-media followings, the United States believes that numerous market participants may have been affected by Defendants' charged conduct." ECF No. 120. at 4. The government's generalized assessment of prospective difficulties in contacting victims is insufficient justification for the CVRA's alternative notification procedures. *See, e.g., United States v. Manahe*, No. 2:22-CR-00013-JAW, 2022 WL 2105932, at *2 (D. Me June 10, 2022) (Court rejected the government's first motion for alternative notice because the government failed to explain why it was impracticable to notify potential victims).

Moreover, it is unclear why the government cannot find and locate crime victims without resorting to a government website. There has already been ample media coverage of this case, and the government has posted, in multiple locations, victim-witness contact information. Further, each of the securities at issue in this case was traded on the public market, and the government is in possession of each of the Defendants' Tweets and the SEC Bluesheet trading data for the relevant stocks. The government can contact people who traded in close proximity to the allegedly misleading Tweets to determine whether they truly are potential victims. At minimum, the government should *attempt* this method before resorting to the alternative victim notification procedures sought in the Notice Motion.

For this reason too, the government has failed to meet its burden to establish that alternative notification procedures are necessary in this case, and the Notice Motion must be denied.

### III. Even if this Court agrees that alternative victim notification is appropriate, the government's proposed notification procedures prejudice Mr. Rybarczyk.

Under the CVRA, when the number of crime victims makes it "impracticable" to provide traditional notice, courts will fashion a "reasonable procedure" to provide potential victims with adequate notice of the proceedings. 18 U.S.C. § 3771(d)(2). Here, the government's proposed website is unreasonable as it seeks to re-publish allegations already published by the DOJ.

The government issued two official press releases about this case—both of which are *already* posted on websites for the U.S. Attorney's Office and DOJ'S Office of Public Affairs.[13] These press releases were disseminated separately on Twitter by at least three distinct government accounts, receiving over 400 Retweets, 50 Quote Tweets, and 1,000 likes.[14] The government's press releases: (i) contained as many as five paragraphs repeating the Indictment's detailed allegations; (ii) included a link to the Indictment itself; and (iii) detailed the maximum penalties each Defendant faces if convicted. The FBI, as described, also Tweeted about the case on the day the charges were announced.[15]

The government's proposed website seeks to include much of the same information already available online in the government's multiple press releases, including a summary of the case and all significant case-related documents, such as the Indictment. In fact, the press releases and the FBI's Tweets include the *identical language* about victim outreach that the government proposes for its new website—namely, "an e-mail address and telephone number for a Victim Assistance Line through which individual potential crime victims could contact the Department of Justice

---

[13] https://www.justice.gov/usao-sdtx/pr/eight-men-indicted-114-million-securities-fraud-scheme-orchestrated-through-social; https://www.justice.gov/opa/pr/eight-men-indicted-114-million-securities-fraud-scheme-orchestrated-through-social-media.
[14] https://twitter.com/DOJCrimDiv/status/1603036860606971909?cxt=HHwWioCw5YHikL8sAAAA (retweeted by the Department of Justice's main account); https://twitter.com/USAO_SDTX/status/1603459692214337537?cxt=HHwWgoC-4YaG0cAsAAAA.
[15] https://twitter.com/FBIHouston/status/1603043856567701507?cxt=HHwWhsC44Z35k78sAAAA.

with questions regarding the case."[16] ECF No. 120. at 4. *See also United States v. Babich,* 301 F. Supp. 3d 213, 217 (D. Mass. Aug. 8, 2017) (finding that the government failed to show why inclusion of information about the case on the DOJ's website, in addition to information provided on the FBI's and U.S. Attorney's websites, was necessary for victim notification and denying its request). This pile on makes it appear, without trial, that Defendants are guilty of the charged crimes. *Id.,* 301 F. Supp. 3d at 217 ("Recognizing the competing interests at stake, namely, the defendant['s] Sixth Amendment right to an impartial jury and a fair trial, the public's First Amendment right of access to proceedings and filings as well as the rights of potential victims, courts have imposed certain restrictions on [] alternative notification procedures."). Indeed, the government's proposed website does not even suggest alerting website viewers that all charges are merely allegations and Defendants are innocent until proven guilty.

Finally, the government's Notice Motion contains no information on why it is necessary to include highly repetitive allegations from the pleadings (and elsewhere) on a victim notification website. *See id.* (finding that the government failed to show why inclusion of information about the case on the DOJ's website, in addition to information provided on the FBI's and U.S. Attorney's websites, was necessary for victim notification and denying its request); *see also United States v. Schessel*, No. CR 22-0374 (ES), 2022 WL 17094777, at *4 (D.N.J. Nov. 21, 2022) ("Courts have [] limited alternative notification procedures to those necessary to provide adequate notice to the victims."); *United States v. Merrill,* No. CRIM. 14-40028-TSH, 2014 WL 6387368, at *2 (D. Mass. Nov. 14, 2014) ("[W]here [the government] releases for publication in the press information in furtherance of its obligations to crime victims, it shall avoid the unnecessary

---

[16] Having already made multiple outreaches to potential victims in its initial press releases, at the very least, the government should provide the defense with the number of people who wrote to the DOJ or FBI casting themselves as victims.

11

repetition of allegations in the pleadings."). The proposed website, which simply seeks to re-post information already publicly available online at various other DOJ websites, is highly prejudicial to Mr. Rybarczyk and should be curtailed. *Schessel*, 2022 WL 17094777, at *5 (rejecting government's proposed notification procedure because it "unnecessarily repeats the allegations contained in the indictment and risks infringing on Defendant's constitutional rights.").[17]

## CONCLUSION

For all the reasons set forth above, Mr. Rybarczyk respectfully requests that the Court deny the government's motion for Alternative Victim Notification in its entirety. Alternatively, to the extent that the government's application is approved, Mr. Rybarczyk requests, at a minimum, that the Court modify the government's proposed procedures such that any government website does not provide both a case summary as well as the Indictment and that the website prominently state that Mr. Rybarczyk (and the other defendants) is presumed innocent until proven guilty. Moreover, Mr. Rybarczyk additionally requests that any case summary not refer to all "market participants" as victims, but instead mimics the language contained in the Indictment.

---

[17] The government cites several cases in its brief in support of its request to create a website to notify potential crime victims in this case. Govt. Br. at 4-5. But these cases are inapposite. *First*, most of the cases the government cites involve charges against company insiders, which is not the case here. *See United States v. Schessel*, No. CR 22-0374 (ES) (fraud involving company's CEO); *United States v. Elbaz*, 18-CR-157-TDC (fraud involving company's CEO); *United States v. Babich*, No. CR 16-10343-ADB (conspiracy involving company's former executives); *United States v. Saltsman,* No. 07-CR-641 (NGG) (fraudulent scheme involving company's CEO and Vice Chairman of the Board of Directors). *Second*, most of the cases cited involve schemes spanning longer periods of time than the alleged conspiracy Defendants are charged with, which, according to the Indictment, lasted just over two years. *See United States v. Elbaz* (scheme spanning three years); *United States v. Babich* (scheme spanning four and a half years); *United States v. Citicorp* (scheme spanning five years); *United States v. Madoff* (scheme spanning almost 30 years); *United States v. Saltsman* (scheme spanning almost four years). *Finally*, in several of the government's cited cases, the court denied or modified the government's proposed procedures. *See Schessel*, 2022 WL 17094777, at *5 (rejecting government's proposed notification procedure because it "unnecessarily repeats the allegations contained in the indictment and risks infringing on Defendant's constitutional rights."); *Babich,* 301 F. Supp. 3d at 217 (denying government's request for a DOJ website, when information on the case was already provided on other government websites). Despite the government's suggestions, these cases do not justify the proposed notification procedures in this case.

Dated: February 1, 2023

Respectfully submitted,

*/s/ Q. Tate Williams*
Q. Tate Williams
Texas Bar No.: 24013760
Philip H. Hilder
Texas Bar No. 09620050
Stephanie K. McGuire
Texas Bar No. 11100520
**Hilder & Associates, P.C.**
819 Lovett Blvd.
Houston, Texas 77006
Tel.: (713) 655-9111
Fax: (713) 655-9112
philip@hilderlaw.com
tate@hilderlaw.com
stephanie@hilderlaw.com

Eric Samuel Rosen
**Freedman Normand Friedland LLP**
225 Franklin Street, 26th Floor
Boston, MA 02110
Tel: (617) 977-4163
erosen@fnf.law

*Attorneys for Defendant
John Rybarczyk*

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2023, a true and correct copy of the above and foregoing was served on all counsel of record via ECF.

*/s/ Q. Tate Williams*
Q. Tate Williams

# **EXHIBIT A**

