### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Case No. 4:22-cr-612** |
| | § | |
| **JOHN RYBARCZYK,** *et al.* | § | **The Honorable Andrew S. Hanen** |
| | § | |
| **Defendants.** | § | |

### United States' Response in Opposition to Defendant Rybarczyk's Motion for a Bill of Particulars and Grand Jury Transcripts

The United States, by and through undersigned counsel, respectfully submits this Response in Opposition to Defendant Rybarczyk's Motion for a Bill of Particulars and Grand Jury Transcripts (Doc. No. 196). The Court should deny the motion because the Superseding Indictment provides adequate notice of the nature of the charges against the Defendant, and the motion is a thinly veiled attempt to get the United States to preview its trial evidence and conduct a review of discovery for the Defendant. A bill of particulars—and the Defendant's other requests—are inappropriate in this case.

## I. Background

### A. Procedural History

A Grand Jury in this District returned the original Indictment on December 7, 2022, charging the Defendant and seven alleged coconspirators with conspiracy to commit securities fraud, substantive counts of securities fraud, and a money laundering count. (Doc. No. 1.) A Grand Jury in this District returned a Superseding Indictment on February 8, 2023, which realleges all charges in the original Indictment and adds nine substantive counts of securities fraud. (*See* Doc. No. 134 ¶ 121.) The Superseding Indictment charges Defendant Rybarczyk with conspiracy to commit securities fraud and six substantive counts of securities fraud. (*See id.* ¶¶ 117, 121.)

The Superseding Indictment also contains 34 pages and 115 paragraphs of introductory allegations preceding the paragraphs containing the charging language. (*See generally* Doc. No. 134.) Those 115 introductory paragraphs include both general and specific allegations that explain in significant detail how the scheme operated. (*See id.* ¶¶ 1–115.) For example, the first paragraph alleges the scheme generally, stating that the Defendant and his codefendants:

> engaged in a scheme to "pump and dump" securities based on false and misleading information and material omissions about those securities that the defendants published on social media platforms, including Twitter, Inc. and Discord, Inc. To carry out the scheme, the defendants (1) purchase shares of a security in their trading accounts; (2) posted messages on social media platforms with false, positive information about the security—**including as to, among other things, the defendants' position in the security, how long the defendants intended to hold the security, the defendants' view that the security would increase in price, and the price the security could reach**—to induce other investors to buy the security and artificially drive up its price, and (3) secretly sold their own shares of the security at a higher price to secure a profit for themselves, at or around the time they posted messages to induce other investors to purchase the same security and concealed their intent to sell.

(*Id.* ¶ 1 (emphasis added).) Notably, the bolded section in the passage above provides a general explanation of the types of false statements at issue in this case. (*See id.*) And the remainder of the Superseding Indictment supplies copious instances of particular examples of false and misleading statements falling under that general description, including many statements by Defendant Rybarczyk. (*See, e.g., id.* ¶¶ 28, 52, 79, 84, 86–87.)

After that general description, paragraphs 2 through 9 introduce the Defendants and include specific details about their social media accounts and other information relevant to the means by which they executed their scheme. (*See id.* ¶¶ 2–9.) Paragraphs 10 through 19 then provide additional general detail about the Defendants' scheme, including specific examples of both the types of social media posts used to execute the scheme and private communications discussing it.

(*See id.* ¶¶ 10–19.) To remove any doubt about the notice provided to Defendants concerning the contours of the charged conduct, paragraph 13 specifically details even more examples of the false and misleading statements at the core of this case. Those statements, as laid out in the Superseding Indictment, include:

   a.  Messages representing that a defendant intended to hold the security, including for a "swing" or a longer-term trade, as opposed to a short-term trade or day trade;

   b.  Messages representing that a defendant "joined" another defendant in purchasing the security or was "adding" to a position in the security;

   c.  Messages concerning a purported price target for the security that was significantly higher than the price at which the security was currently trading, and that was higher than the defendants actually valued the security; and

   d.  Messages concerning "due diligence" about the security and purported catalysts that would increase the security's price over time.

*Id.* ¶ 13.

Further still, the Superseding Indictment then provides copious detail about ten specific examples of the scheme in operation, corresponding to ten of the substantive counts of securities fraud alleged, including multiple involving Defendant Rybarczyk. (*See id.* ¶¶ 20–121.) The detail in this section, and throughout the Superseding Indictment, provides far more information than what is constitutionally required and to which the Defendants are entitled.

Finally, all of those initial 115 paragraphs, including both the general facts sections and the ten examples of specific means, are expressly incorporated into the central charging paragraphs for the substantive securities fraud offenses. (*See id.* ¶ 120.) Paragraph 121 then recites verbatim the statutory text, and adds a chart containing information about each substantive securities fraud count, including: the defendant(s) charged in each particular count, the month(s) in which the

relevant defendant(s) executed the securities fraud scheme (often over multiple days or weeks), the name of the respective securities issuers, and the ticker symbols under which the securities of those issuers traded. (*See id.* ¶ 121.)

### B. The United States has provided timely disclosure of discovery and will continue to do so.

Since the start of this case only three months ago, the United States has made three organized discovery productions so that this case may move expeditiously towards the October trial date. The produced materials are Bates-labeled, searchable, and organized in folders to aid the Defendants' review and trial preparation. The vast majority—if not all—of the discovery has been produced in electronic searchable format with indices, enabling the Defendants to search and categorize documents in any manner they desire. The already produced discovery in this case includes the following categories of records, among other materials:

    a.  The Defendant's and his charged coconspirators' social-media activity on Twitter, Inc. and Discord, Inc.;

    b.  The Defendant's and his charged coconspirators' trading records;

    c.  The seized phone messages from the electronic device of Defendant Deel, some of which include messages with the Defendant; and

    d.  Interview reports.

The United States will comply with its *Brady*, Jencks, and *Giglio* obligations in this case and will continue to produce discovery to maintain the October trial date.

## II.     Legal Standard

"A defendant possesses no right to a bill of particulars . . . ." *United States v. Burgin*, 621 F.2d 1352, 1358–59 (5th Cir. 1980). Rather, "the decision on the motion lies within the discretion of the court," *id.*, which "is afforded substantial discretion" in making that determination. *United States v. Davis*, 582 F.2d 947, 951 (5th Cir. 1978). In exercising that discretion to determine whether a bill of particulars is warranted, a court examines whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges against him to enable him to prepare for trial, *see United States v. Gorel*, 622 F.2d 100, 104 (5th Cir. 1979), while keeping in mind that "[t]he indictment need not provide him with the evidentiary details by which the government plans to establish his guilt." *United States v. Gordon*, 780 F.2d 1165, 1172 (5th Cir. 1986).

"Even where an indictment fails to provide adequate notice of the charged offense, a bill of particulars is not warranted if the Government has provided 'the necessary information in another satisfactory form,'" such as discovery. *United States v. Carrillo-Morones*, 564 F. Supp. 2d 703, 705 (W.D. Tex. 2008) (quoting *United States v. Kirkham*, 129 Fed. App'x 61, 72 (5th Cir. 2005) (finding that "even if the indictment had not furnished adequate information about the charges brought," the defendants were sufficiently informed of the charges against them because "[t]he government provided both defendants with voluminous discovery including the testimony and exhibits eventually introduced against them at trial")); *see also United States v. Marrero*, 904 F.2d 251, 258 (5th Cir. 1990) (noting that in addition to the indictment, if "the information requested is provided to the defendant in some other form, no bill of particulars is required"); *United States v. Campbell*, 710 F. Supp. 641, 642 (N.D. Tex. 1989) (holding that "the breadth of the government's pretrial disclosures is relevant to the disposition of [a] motion" for a bill of particulars (citing *United States v. Bearden*, 423 F.2d 805, 809 (5th Cir. 1970)). Accordingly, the

production of "voluminous discovery" by the government will "obviate[] the need for a bill of particulars." *Kirkham*, 129 F. App'x at 72; *United States v. Castro-Flores*, No. 12-cr-614, 2013 WL 6858523, at \*2 (S.D. Tex. Dec. 30, 2013) (noting that, where the United States has provided the defendant "the necessary information in another satisfactory form, such as through discovery, a bill of particulars is unnecessary").

Defendants may not use a bill of particulars as an investigative tool; a bill "is not designed to compel the government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial." *Burgin*, 621 F.2d at 1359; *see also United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978) ("A defendant should not use the bill of particulars to obtain a detailed disclosure of the government's evidence prior to trial.") (internal quotations and citation omitted)); *Davis*, 582 F.2d at 951 ("[I]t is well established that generalized discovery is not a permissible goal of a bill of particulars."). Defendants "are not entitled to discover all the overt acts that might be proved at trial through a bill of particulars." *United States v. Djuga*, No. 14-cr-140, 2015 WL 1412100, at \*2 (E.D. La. Mar. 25, 2015) (internal quotations and citation omitted) (rejecting defendant's request for "the dates, times, and places at which the defendant is alleged to have combined, conspired, confederated, and agreed with [other individuals] to commit" the violations in the indictment). Instead, the Court "must balance the needs of the defendant against the government's right not to disclose its witnesses, evidence or legal theories." *United States v. Miller*, 210 F. Supp. 716, 717 (S.D. Tex. 1962). Ultimately, the question is not whether the information sought would be helpful to the defendant, but rather whether it would be *necessary* to prepare a defense. *See United States v. Barrentine*, 591 F.2d 1069, 1077 (5th Cir. 1979).

Denial of a motion for a bill of particulars is reviewable on appeal from a judgment of conviction, but the judgment will be reversed only if denial was a clear abuse of discretion. *United*

*States v. Vasquez*, 867 F.2d 872, 874 (5th Cir. 1989). Such an abuse will be found "only if it can be shown that the defendant was actually surprised at trial and thereby incurred prejudice to his substantial rights." *United States v. Williams*, 679 F.2d 504, 510 (5th Cir. 1982).

### III.   The Court should deny the Defendant's motion because a bill of particulars is unwarranted.

At the outset, the Court need not consider the Defendant's motion because it is untimely. Federal Rule of Criminal Procedure 7(f) makes clear that "[t]he defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." The Defendant did not so move within 14 days of arraignment for either the initial Indictment or Superseding Indictment. (*See* Doc. No. 196 (Mar. 8, 2023); Feb. 14, 2023 Arraignment Minute Entry; Dec. 15, 2022 Arraignment Minute Entry.) Accordingly, the Court need not consider or permit the Defendant's motion.

If the Court permits the motion, the Court should still deny it. The Defendant is not entitled to a bill of particulars in this case. Instead, the Defendant seeks a bill of particulars to gain premature insight into the United States' trial strategy and its exhibit and witness list—neither of which is appropriate for, nor available through, a bill of particulars. *See, e.g.*, *United States v. Hajecate*, 683 F.2d 894, 898 (5th Cir. 1982) ("[A] bill of particulars cannot be required to compel revelation on the full theory of the case or all the evidentiary facts."); *United States v. Pena*, 542 F.2d 292, 294 (5th Cir. 1976) (affirming that a defendant has no right to a list of witnesses under Fed. R. Crim. P. 7(f)).

The 44-page Superseding Indictment leaves no doubt as to the nature of the charges against the Defendants. It sets out in detail, among other things, the charged coconspirators, the nature of the specific scheme used by the Defendants, the specific categories of statements that are alleged to be false and misleading, the purpose of the conspiracy and scheme, means by which they were

7

executed, time frames in which they were executed, and many of the securities in which they were executed. (*See generally* Doc. No. 134.) Given the detail and breadth of the allegations in the Superseding Indictment, Defendant cannot legitimately claim surprise or lack of notice about the charged conduct.

The contours of the charged conduct are detailed extensively in the Superseding Indictment, and the evidence in support has already been produced in organized and searchable discovery. As noted above, Defendants have already had in their possession for approximately two months the two pillars of the United States' evidence in this case: their social-media activity and trading records. This material was organized into folders based on the source or type of documents and produced in electronic form. Thus, the Defendant can readily access and review documents, and organize trading and social-media records adequately to answer his own questions and prepare his own defense. A bill of particulars that seeks to have the United States do Defendant's job for him is not appropriate.

The already produced discovery will be further distilled by the United States' forthcoming production of the additional tickers and time periods relevant to the Superseding Indictment's profit allegations, which the Defendant alluded to in his filing. (Doc. No. 196 at 18 ("We will be providing by the end of the month a list of tickers and time ranges relevant to the profit allegation in paragraph one of the Superseding Indictment.").)[1]

To the extent there is any remaining concern about lack of fair notice or surprise, the United States will produce its expert disclosures, trial exhibits, and witness lists in advance of the October

---

[1] The United States plans to make this disclosure in short order, endeavoring to provide almost seven months' advanced notice to the Defendants so that the October 23, 2023 trial date in this matter holds firm. The United States views this information as more properly germane to an expert disclosure, and reserves the right to supplement or amend the information at the time of those disclosures, as is also consistent with Rule 7(f). *See* Fed. R. Crim. P. 7(f) ("The government may amend a bill of particulars subject to such conditions as justice requires.").

23, 2023 trial date. Such voluntary disclosure both furthers the interests of justice and also undercuts any credible claim of surprise or prejudice. *See, e.g.*, *Kirkham*, 129 Fed. App'x at 72–73. Such disclosure should also resolve the Defendant's demand for premature disclosure of the United States' witnesses, which should be denied. *See, e.g.*, *United States v. Hughes*, 817 F.2d 268, 272 (5th Cir. 1987) (finding no prejudice when district court denied bill of particulars seeking the identity of unindicted coconspirators when defendants at trial "were given one or more days['] notice of the Government's intent to call" unindicted coconspirators). [2]

Given that the Defendant can resolve his own questions by the material he has received or will receive, the Defendant's motion is best characterized as a poorly disguised attempt to use a bill of particulars as an improper discovery device. The United States also has received several similar letters from other Defendants in this case that read precisely as sets of interrogatories submitted in a civil case, where the defendant's attorney asks the plaintiff for all of the facts supporting a specific allegation in the civil complaint. No doubt, a motion like this one will ensue on the heels of those letters.

---

[2] The court in *United States v. Palacio* provided a helpful discussion of the relationship between a bill of particulars and other rules of criminal discovery:

> If a bill of particulars was used to serve as a wholesale discovery device, it would frustrate the federal discovery rule. Rule 16(b)(2) of the Federal Rules of Criminal Procedure states that the rule "does not authorize the discovery or inspection of . . . statements made . . . by government . . . witnesses, or by prospective government . . . witnesses." Fed. R. Crim. P. 16(b)(2). A defendant who desires a list of government witnesses or unindicted co-conspirators could thus bypass the Rule 16(b) restriction on discovery by asking for and receiving a bill of particulars pursuant to Fed. R. Crim. P. 7(f), which simply provides that the court may direct the filing of a bill of particulars. Because a criminal defendant has no right to obtain a list of witnesses by simply calling his request a "bill of particulars," *United States v. Pena*, 542 F.2d 292, 294 (5th Cir. 1976), a bill of particulars is not automatically accorded the status of a supplement to an indictment.

*United States v. Palacio*, No. 21-cr-20301, 2021 WL 4066894, at *2 (S.D. Fla. Sept. 7, 2021).

But they are all improper. This is not a civil case. The United States is not required to respond to twenty-page requests of every conceivable question that a Defendant could resolve by himself through moderate diligence and review of discovery. A bill of particulars may not be used in a federal criminal case as a fishing expedition to learn evidentiary details about the United States' case or trial theories. *See, e.g.*, *Burgin*, 621 F.2d at 1358–59; *see also United States v. Kendall*, 665 F.2d 126, 135 (7th Cir. 1981) (affirming the denial of a bill of particulars and explaining that "[t]he defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved"). Instead, the primary purpose is to apprise the Defendant of the charges against him and to avoid unfair surprise at trial. In this case, no such concern should exist.

As to this repeatedly expressed double jeopardy concern, the Defendants will all be able to plead double jeopardy for social media-based pump and dump securities fraud schemes perpetrated on Twitter and Discord with the specific securities alleged in the specified time frames alleged. There is no reasonable concern here.

On surprise at trial, the information the Defendant has and will have is far more than sufficient for him to prepare for the full range of false and misleading statements he will face at trial. Those statements are generally detailed in the Superseding Indictment, ¶ 13, and Defendants will have had the underlying evidence in their possession for approximately ten months before trial in this case. It is evidently clear to the Defendant that, with the tickers and time periods provided, the Defendant "can identify potentially relevant evidence from the voluminous data produced (more than 400 gigabytes) and obtain copies of relevant documents to prepare his defense." (Doc. No. 196 at 7.) He will have that information and should put in the work to do so. And, ultimately, the statements at issue will be featured in the United States' trial exhibits, which

10

will be disclosed appropriately prior to trial, eliminating any possibility of surprise or prejudice. *See, e.g.*, *Kirkham*, 129 Fed. App'x at 72–73.

Indeed, the Defendant's social-media posts about the specified securities during the specified time periods are so replete with false and misleading statements that it is, as the Defendant describes it, a "haystack of needles"—when you reach in to find them, you cannot avoid getting pricked. (*See* Doc. No. 196 at 10.) But that is not an excuse for the Defendant to use a bill of particulars to get the United States to do the Defendant's trial preparation for him. *See, e.g.*, *United States v. Bartelt*, No. 96-cr-50034, 1997 WL 436229, at *7 (N.D. Ill. July 7, 1997) ("A bill of particulars is not a vehicle for defense counsel to use to shift the burden of basic trial preparation to the prosecution (or the court), and that is exactly what [the defendant] has attempted to do with respect to this motion."). The Court should deny the Defendant's attempt to avoid this effort by impermissibly transforming a bill of particulars into an opportunity for the United States to investigate the case for each Defendant. That is contrary to the purpose of a bill of particulars and should not be permitted. *See id.*

The cases cited by the Defendant do not change this conclusion. They are factually and legally distinct, and the Defendant's exposition of each case omits critical context damning to his cause. For example, the Defendant cites *United States v. Davis*, a healthcare case in which the defendant was charged with receiving kickbacks for referring patients to certain mental health centers for medically unnecessary services. *United States v. Davis*, No. 14-cr-171S-12, 2014 WL 6679199, at *1 (S.D. Tex. Nov. 25, 2014); *see also* (Doc. No. 196 at 14–15). There, the court *rejected* the defendant's request for a bill of particulars supplying the acts and dates as they related to the referrals for medically unnecessary services, agreeing "that to some extent [the defendant's] request seems to be for a detailed disclosure of the Government's evidence prior to trial." *Id.* at

*3. The court noted that, "[g]enerally, the fact that the requested information may be *useful* to the defendant does not, alone, establish the need for a bill of particulars." *Id.* The court also noted that it was not the United States' burden to identify information relating to the defendant's affirmative defenses. *See id.*

With respect to the illegal kickbacks, the court ordered the United States to provide "the names of Medicare beneficiaries whose claims were allegedly tainted by kickbacks." *Id.* at *4. In this case, the closest (albeit strained) analogies to that disclosure are disclosures of the names of the securities tainted by the Defendant's charged fraud or the names of victims who will testify at trial. *See id.* With respect to the securities, the Defendant already has much of the information and will have much more in the coming weeks. With respect to the victim witnesses, the Defendant will have the names of those testifying sufficiently in advance of trial and any related interview reports. Otherwise, the *Davis* case entirely undermines the Defendant's cause, as the information the United States voluntarily provides here is more than what the *Davis* court found necessary to be disclosed. *See id.*

As the Defendant even points out, the *Davis* court observed: "[w]hile it is possible for the Government to fulfill its obligations by providing materials, if the materials are voluminous, then *documents alone* are not a substitute for disclosure of the alleged fraudulent transactions." *Id.* at *4 (emphasis added); *see also* (Doc. No. 196 at 15). But *documents alone* are not what the Defendant has here. Far from it. In addition to the documents, which include the full universe of the Defendant's potentially relevant social media and trading activity as well as that of his charged coconspirators, the Defendant has a list of relevant securities at issue which will soon grow, along with the dates during which the posting and trading in those specified securities at issue occurred.

That is far more than documents alone and it is far more than what the *Davis* court ordered the United States to provide. *See Davis*, 2014 WL 6679199, at *3–4.

The *United State v. Trie* case is similarly inapposite. 21 F. Supp. 2d 7, 21 (D.D.C. 1998). In that case, which concerned a campaign contribution scheme, the court explained that "portions of the indictment are difficult to follow." *Id.* The court found that the vague indictment, coupled with the 45 pages of excerpts in which the false statements were contained, was not sufficient for the defendant there to understand what types of false statements he would face at trial and directed the government to provide information about the false statements at issue. *Id.* But the *Trie* court also *denied* that defendant's request for "information concerning all the overt acts not already specified in the indictment." *Id.* at 23. The Court stated "[t]his request is too broad," and reasoned that "[t]o require the government to identify all alleged overt acts . . . in furtherance of the alleged conspiracies would be a heavy burden indeed and not essential to the preparation of a defense." *Id.* at 23.

Further, the information available to the Defendant here is not comparable to the vague indictment and information available in the *Trie* case, as described throughout this brief. *See id.* at 21. The Defendant can readily identify the numerous false statements at issue through the information in his possession coupled with the Superseding Indictment (including both its particularities and general description of the nature of the false statements at issue in this case), the specific tickers at issue which must be in the statements, and the time periods at issue with respect to each specific ticker. Further still, he can compare all of that with the contemporaneous trading records that lay bare that the Defendant was not, in fact, doing what he said publicly. And he will have the United States' trial exhibits also containing the false statements sufficiently in advance of trial. There's simply no similarity here to this twenty-five year old case from another

district alleging completely different crimes, and the Court should reject any attempt at a strained factual comparison to a case not even persuasive in its own court.[3] *See id.*; *see also United States v. Sutton*, 21-cr-0598, 2022 WL 1183797, at *7 (D.D.C. Apr. 21, 2022) (citing *Trie* when rejecting the defendant's motion for a bill of particulars where "the government ha[d] already met the 'heavy burden' required for a conspiracy charge," through an indictment that included "over twenty paragraphs" of manner and means detail and examples of overt acts).

Similarly, in *United States v. Ryan*, the Court granted the defendants' request for the government to identify which statements were alleged to be false, where it appears that all the defendants had was the indictment and voluminous discovery, not the many other data points of triangulation available to this Defendant. *United States v. Ryan*, 20-cr-65, 2021 WL 2018081, at *2 (E.D. La. May 2, 2021). Further, those false statements were in loan package documents, which it's fair to presume would be their own standalone trial exhibits, unchanged from the form in which they were presented at the time of that motion. *See id.* Here, the United States anticipates its trial exhibits will not be the full scope of the Defendant's social-media activity, but rather isolated

---

[3] Another case the Defendant cites, *United States v. Anderson*, further undermines his attempted use of the *Trie* case. *See United States v. Anderson*, 441 F. Supp. 2d 15 (D.D.C. 2006); (Doc. No. 196 at 13–14.). That court, in assessing the indictment in a tax prosecution, explained:

> [T]his court does not believe that generally it is necessary to provide date, time, and place of each false statement or concealment and the persons involved. To the extent that the Court suggested otherwise in *Trie*, suffice it to say that ***Trie* was a unique case because of the convoluted theory on which the defendant was indicted and the way in which the indictment was drafted.** *See United States v. Trie*, 21 F. Supp. 2d at 21 ("portions of the indictment are difficult to follow" and the false statement counts are "particularly enigmatic"). What the Court said there is not applicable here.

*Anderson*, 441 F. Supp. 2d at 19 (emphasis added) (internal quotations and citation omitted). Although that court did grant that defendant's motion for greater specificity as to the false statements, that case was significantly legally distinct as a tax prosecution, and there is no indication from the opinion that the defendant had the same level of detail and identification available to this Defendant. *See id.*

collections from it using all the other parameters discussed, and, thus, will further delineate the statements at issue for trial. And a critical fact the Defendant neglected to mention is that the *Ryan* court *denied* the defendant's "other various requests for particulars, as they would improperly require the government 'to explain the legal theories upon which it intends to rely at trial.'" *Id.* (quoting *Burgin*, 621 F.2d at 1359); *see also* (Doc. No. 196 at 14).

The Defendant's misleading suggestion that "in cases alleging false statements or omissions, courts have *consistently required* the prosecution to identify all statements or omissions in a bill of particulars" is demonstrably false. (*See* Doc. No. 196 at 13 (emphasis added).) Indeed, the Defendant's search far and wide for cases that might support his strained theory omits reference to any of the innumerable cases that do not. *See, e.g.*, *United States v. Moyer*, 674 F.3d 192, 203 (3rd Cir. 2012) ("Although the government did not identify every omission or inclusion that rendered false the documents identified in the indictment, and thus did not, at the pre-trial stage, weave the information at its command into the warp of a fully integrated trial theory for the benefit of the defendant, the government was not required to do so." (internal quotations and citation omitted)); *United States v. Fitzgerald*, No. 305-cr-00013, 2006 WL 734005, at *1 (W.D. Va. Mar. 21, 2006) (denying defendant's motion for a bill of particulars to provide notice of the particular false statements at issue where the full scope of discovery was made available); *United States v. Carey*, 152 F. Supp. 2d 415, 431–32 (S.D.N.Y. 2001) (denying the defendant's motion to identify the particular false statements and what the government alleges is false about them where the defendant had access to all the potential statements in discovery, the time to go through the materials, and did "not cite a single case from this jurisdiction—and the court is unaware of any— in which the government has been required to disclose its theory before trial as to why a particular statement is false"); *United States v. Cisneros*, 26 F. Supp. 2d 24, 55–56 (D.D.C. 1998) (denying

15

bill of particulars seeking identification of alleged false statements where the 65-page indictment, with 31 pages of background facts, "[r]ead as a whole . . . clearly provides enough information to allow [the defendant] to understand the charges against him and prepare to defend himself against those charges").

**IV.** **The Court should deny the Defendant's request for the Grand Jury transcripts because the Defendant has not demonstrated a particularized need to violate Grand Jury secrecy and the basis of the Defendant's request has been rejected by the Supreme Court of the United States multiple times.**

Our system of justice has a "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts." *Dennis v. United States*, 384 U.S. 855, 869 (1966) (internal quotations and citation omitted). A defendant must show a "particularized need" before disclosure of grand jury minutes may be granted. *Id.* at 868; *Posey v. United States*, 416 F.2d 545, 557 (5th Cir. 1969). A typical showing of particularized need for a grand jury transcript arises when a litigant seeks to use a grand jury transcript at trial to impeach a witness, refresh recollection, or test credibility. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1958); *see also Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222 n.9 (1979). In analyzing a request for grand jury materials, the Court should "consider not only the immediate effects [of disclosure] upon a particular grand jury, but also the possible effect upon the functioning of future grand juries." *Douglas Oil*, 441 U.S. at 222. Further, the request should be limited to material for which particularized need was shown. *Id.* at 222–24. Disclosure should not be allowed based on a mere showing of relevance or for general discovery. *See, e.g.*, *Procter & Gamble*, 356 U.S. at 682; *Hernly v. United States*, 832 F.2d 980, 984–85 (7th Cir. 1987). Convenience, expense, and the complexity of the case are also insufficient reasons to justify disclosure. *See, e.g.*, *Procter & Gamble*, 356 U.S. at 682–83.

16

The Supreme Court of the United States made clear long ago that the Defendant's motion is entirely inappropriate. *See United States v. Williams*, 504 U.S. 36, 51–54 (1992). The Supreme Court explained:

> A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was "incomplete" or "misleading." Our words in *Costello* bear repeating: **Review of facially valid indictments on such grounds "would run counter to the whole history of the grand jury institution, and neither justice nor the concept of a fair trial requires it."**

*Id.* at 54–55 (emphasis added) (quoting *Costello v. United States*, 350 U.S. 359, 364 (1956)); *see also Costello*, 350 U.S. at 362–364 (expressly rejecting defendant's request to establish a rule "permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence" and noting that a Justice in 1852 "could say, 'No case has been cited, nor have we been able to find any, furnishing an authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof.'" (quoting *United States v. Reed*, 27 F. Cas. 727, 738 (No. 16,134) (CCNDNY 1852))).

The Defendant's motion does not even mention the term "particularized need," let alone articulate one, and cites no case that supports his request. (*See* Doc. No. 196 at 15–16.) Perhaps because there are no circumstances here that could establish such a need, and the request is directly contrary to multiple explicit Supreme Court rulings. *See, e.g.*, *Williams*, 504 U.S. at 51–54; *Costello*, 350 U.S. at 364; *In re Grand Jury Testimony*, 832 F.2d 60, 63 (5th Cir. 1987) (explaining the need for grand jury testimony to impeach witness or to refresh recollection "must be real" before grand jury transcript may be disclosed; "bald assertions of such need are not sufficient"); *United States v. McGinnis*, 344 F. Supp. 89, 91 (S.D. Tex. 1972) ("Defendant has not shown such a particularized need for copies of said Grand Jury testimony well in advance of trial by alleging

17

a generalized credibility problem, and the need for trial preparation." (internal quotations and citation omitted)).

The Defendant's broad, baseless speculation that certain allegations in the Superseding Indictment—which is facially proper and passed Grand Jury muster twice—may not be supported by sufficient facts is not even close to the strong showing of narrowly tailored particularized need required to violate grand jury secrecy, and is a ground expressly prohibited by the Supreme Court multiple times. *See, e.g.*, *Williams*, 504 U.S. 54–55; *Costello*, 350 U.S. at 362–64. Indeed, Courts rightly deny such attempts. *See, e.g.*, *id.*; *United States v. Harbin*, 585 F.2d 904, 907 (8th Cir. 1978) (finding court did not err in refusing to breach grand jury secrecy and allow defendant to inspect minutes where defendant stated no particularized need but made "only a general plea that inspection might yield a ground upon which to move to dismiss indictment"); *United States v. Basciano*, 763 F. Supp. 2d 303, 314–16 (E.D.N.Y. 2011) (denying defendant's motion to compel production of grand jury minutes that was based entirely on speculation about what may have occurred before the grand jury and, thus, failed to make a particularized showing of need). As such, the Court should reject this blatant, improper fishing expedition seeking baselessly to breach the deeply rooted bulwark of grand jury secrecy with an expressly prohibited basis contrary to the entire history of the Anglo-American legal system. *See, e.g.*, *Williams*, 504 U.S. at 51–55.

## CONCLUSION

Given the detailed allegations in the Superseding Indictment, the discovery already provided, and the United States' voluntarily production of preliminary exhibit and witness lists and copies of proposed exhibits in advance of the October 23, 2023 trial date, there is no justification for any of the requests in the Defendant's motion. It should be denied.

Dated: March 12, 2023                Respectfully submitted,


                                     GLENN S. LEON
                                     Chief, Fraud Section
                                     Criminal Division, Department of Justice

By:      */s/ John J. Liolos*
                                       Scott Armstrong, Assistant Chief
                                     John J. Liolos, Trial Attorney
                                     Fraud Section, Criminal Division
                                     United States Department of Justice
                                     1400 New York Ave. NW
                                     Washington, DC 20005
                                     Tel.: (202) 768-2246


                                     ALAMDAR S. HAMDANI
                                     United States Attorney
                                     Southern District of Texas

By:      */s/ Thomas Carter*
                                       Thomas H. Carter
                                     Assistant United States Attorney
                                     State Bar No.: TX24048387
                                     1000 Louisiana Street, 25th Floor
                                     Houston, Texas 77002
                                     Tel.: (713) 567-9470

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2023, I will cause the foregoing motion to be electronically filed with the Clerk of the Court using the CM/ECF. system, which will provide copies to counsel for all parties.

*/s/ John J. Liolos*
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section