UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br> **v.** <br><br> **EDWARD CONSTANTINESCU,** <br> **PERRY "PJ" MATLOCK,** <br> **JOHN RYBARCZYK,** <br> **GARY DEEL,** <br> **STEFAN HRVATIN,** <br> **TOM COOPERMAN,** <br> **MITCHELL HENNESSEY,** <br> **DANIEL KNIGHT.** | **No. 4:22-CR-00612** |

**DEFENDANTS' JOINT**
**OPPOSED MOTION FOR CONTINUANCE**

Defendant, John Rybarczyk ("Rybarczyk") joined by Defendants Edward Constantinescu, Perry "PJ" Matlock, Gary Deel, Stefan Hrvatin, and Tom Cooperman, (collectively, "Joint Defendants,")[1] file this motion to continue the October 23, 2023, trial of this complex case[2] and accompanying deadlines at least 180 days pursuant to 18 U.S.C § 3161(h)(7)(B)(ii) and the 6th Amendment to the U.S. Constitution.

**INTRODUCTION**

On December 7, 2022, an Indictment asserting a vast alleged securities "pump and dump" scheme for $114 million in profits was returned against the eight Defendants — alleging novel legal theories about speech in the twenty-first century *agora* of social media, the marketplace of

---

[1] The eighth defendant, Daniel Knight, pled guilty on March 27, 2023. ECF No. 221. Mitchell Hennessey does not join.

[2] This Court designated the case as complex on January 3, 2023, t. ECF No. 87. "[A] district court's certification that the criminal case is 'complex' tolls the Speedy Trial clock indefinitely." *See Gonzalez v. United States*, 2020 WL 1891877, at *1 (S.D. Tex. Apr. 15, 2020).

ideas, and the stock market, jettisoning long standing statutory, regulatory, and precedential guidance in securities litigation in Title 15 of the U.S. Code, Code of Federal Regulations, and common law. It has since been superseded. ECF No. 134.

In accordance with its responsibilities and orders of this Court, the Government has produced—to put it bluntly—an extraordinary volume of discovery materials (more than a terabyte) that must be reviewed by the defense. In addition, the Government recently designated a series of experts expected to testify that tens of thousands of trades and tens of thousands of social media communications – *communications the experts assume are false* – resulted in $121 million in alleged illicit profits. In fact, the Government "experts" allege that the defendants, collectively, took part in an extraordinary 397 separate pump and dump schemes. Defendants, only just recently made aware of the details of these allegations, must have adequate time to review and investigate these purportedly false statements and profits to prepare (and present) a defense, confront and cross-examine their accusers, and receive effective assistance of counsel, as guaranteed by the 6th Amendment to the United States Constitution.

For these reasons, Defendants respectfully request a continuance with respect to all deadlines included in the present scheduling orders, within the meaning of 18 U.S.C. § 3161(h)(7)(B)(ii), such that the motion deadlines, pretrial proceedings, and the date of the trial itself are all continued for at least 180 days.

## **ARGUMENT**

In addition to their rights to effective assistance of counsel, confrontation, and to present a defense the basis of this motion, the 6th Amendment also guarantees criminal defendants "the right to a speedy trial." U.S. Const. amend. VI. The Speedy Trial Act (the "Act") implements this guaranty by governing the time limits within which the trial of an accused must commence. 18 U.S.C. § 3161 et seq. Under the Act, judicial officers are instructed, "at the earliest practicable

time," to "set the case for trial... so as to ensure a speedy trial." 18 U.S.C. § 3161(a). However, the Act implicitly acknowledges the other 6th Amendment rights that must be balanced with speedy trial. The Act recognizes "that criminal cases vary widely and that there are valid reasons for greater delay in particular cases." *Zedner v. United States*, 547 U.S. 489, 489 (2006). Thus, the Act also "includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start." *Id.*; 18 U.S.C. § 3161(h). Any "period of delay resulting from a continuance" is excludable from the Act's time limits "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Two factors a Court may consider are:

   (i)   Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

   (ii)  Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

   -   18 U.S.C. § 3161(h)(7)(B)(i), (ii).

As to Subsection (B)(i), if required to abide by the dates set forth in the scheduling orders presently in place, the Joint Defendants would suffer a miscarriage of justice in that they would not have adequate time to prepare for trial and present a defense, would not be prepared to confront and cross-examine their accusers, and would receive ineffective assistance of counsel.

With respect to (B)(ii), this case is so unusual and complex that it should, at this stage, be continued for at least 180 days pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii) because of the existence

of novel questions of fact or law, the nature of the prosecution, and the number of Defendants (eight).

A.   **The Government's Novel Theory of Prosecution Mandates That Additional Time to Prepare for Trial Be Granted**

As the Court is aware from the many pending motions to dismiss filed or joined by the Defendants,[3] the Government's responses, and the Defendants' replies, this case presents novel issues of law based upon social media statements (many of which are obviously true or opinion) and stock trades by individuals who are neither insiders nor licensed financial professionals and owe no legal duty to anyone.

The novelty and the complexity of this case are the result of the Government's admitted strategy to avoid the well-developed and trodden framework of securities fraud litigation in Title 15 relied upon by professionals, consumers, and regulators alike, and proceed *solely* with the post-Enron scandal enacted statutes of 18 U.S.C. 1348 et seq. (securities fraud and conspiracy to commit securities fraud in Title 18 of the U.S. Code).[4] The prosecution cites legislative history as a sword to cut any tether of its theories to traditional understandings of securities law, while also using that same history to shield it from Defendants' arguments that the statute is vague (despite the selected quotes demonstrating § 1348 *is vague by design*).[5] Nevertheless, the Court need look no further

---

[3] *See* ECF Nos. 159, 170, 262, 265, 266, 267, 268, 269, 271.

[4] The paucity of citations to cases interpreting § 1348 in the briefing indicates the infrequency of its employment. Bureau of Justice Statistics data reports that from FY 2002 to FY 2021, there were only 164 prosecutions nationwide under 18 U.S.C. § 1348, or an average of less than 9 per year. By comparison, over the same time period there were 1,333 prosecutions under 15 U.S.C. § 78j, or an average of almost 67 pe year. *See* BJS Federal Justice Statistics Program website (https://www.bjs.gov/fjsrc/). Some publicly reported cases appear to reflect § 1348 prosecutions alongside traditional Title 15 securities violations. *See, e.g. United States v. Chow,* 990 F.3d 125 (2nd Cir. 2021).

[5] The Government's oppositions to dismissal repeatedly cite portions § 1348's legislative history. *See e.g. United States Response in Opposition to Defendant Rybarczyk's Motion to Dismiss* ECF No. 197 at 17 and 19, in which it emphasizes a quote from Sen. Patrick Leahy. ("'The provision should not be read to require proof of technical elements from the securities laws, and is intended to provide needed enforcement flexibility in the context of publicly traded companies to protect shareholders and prospective shareholders against all the types scheme and frauds which

than the Government's own boasts as to the novelty of the prosecution. When this case was first publicly revealed, U.S. Attorney Alamdar S. Hamdani remarked in a press release that his office "will be on the cutting edge of prosecuting" fraud related to "advances in technology and social media."[6] The nature of prosecuting this novel theory necessitates the review and explanation of thousands of social media communications in the context of accompanying stock trades, as well as the filing of numerous motions *in limine* prior to the trial.

**B.     The Deluge of Discovery Dumped on the Defendants By the Government Also Mandates a Continuance in Order to Review This Discovery.**

Defense counsel have a duty to investigate the allegations and evidence against their clients. *See Strickland v. Washington,* 466 U.S. 668 at 690-91(1984). ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). Here, the alleged conspiracy encompasses tens of thousands of trades and communications over several years, the factual basis for which is purportedly reflected in vast amounts of electronic discovery.

### 1. Terrabytes of Discovery Produced by The Prosecution

The Government has made more than fifteen (15) separate productions of discovery to Defendants comprising *terrabytes* of data. These productions include voluminous social media data (*i.e.* tweets and direct messages), stock trade data, financial records, audio and/or video

---

inventive criminals may devise in the future.'"); *United States Response in Opposition to Defendant Constantinescu's Motion to Dismiss* ECF No. 295 at 16, fn. 13 ("The Court should not, as Defendants consistently invite it to do, give preference to Title 15 and cases interpreting its provisions over cases interpreting the Title 18 fraud statutes. As demonstrated by courts that have interpreted Section 1348, as well as its legislative history, Section 1348 was passed precisely to avoid becoming ensnared in the 'psychic thicket' of concepts developed in the context of wholly different, hyper-technical securities law language and requirements developed in response to wholly different concerns."); *Id.* at 26 fn. 19 ("The Senator also expressly explained that Section 1348 was necessary to ensure a technical Title 15-based defense, precisely like the one Defendants advance here, would not stand in the way of justice").

[6] United States Attorney's Office, Southern District of Texas "Eight men indicted for $114 million securities fraud scheme orchestrated through social media." (December 22, 2022) available at https://www.justice.gov/usao-sdtx/pr/eight-men-indicted-114-million-securities-fraud-scheme-orchestrated-through-social (last viewed July 3, 2023).

recordings, investigative reports and other materials purporting to be third party business records.[7] Much of this data is in the form of complex Microsoft Excel spreadsheets which are so large that computers with insufficient memory or processing power may not even be able to open them.

Moreover, the Government continues to produce voluminous discovery at a rapid clip. Recently, the Government produced *additional* voluminous records with its purported expert designation which states that thousands of "tweets" or "Discord chats" are false –without any explanation thereof – and ascribing profits that comprise the alleged $114 million (or more), which Defendants must also investigate in order to present a defense and render effective assistance of counsel.

### 2. The Alleged Fraudulent Tweets and Trades Finally Revealed in the Government's June 16, 2023, Expert Report Also Mandate Additional Time.

On June 15, 2023, the Government designated multiple experts, including a Dr. Garibotti, who will attempt to explain the basis for the Government's alleged profit number in the context of social media and trade activity. According to Dr. Garibotti's declaration, "[t]here are 397 At-Issue Trading Episodes covering 127 unique securities and trading activity between January 2020 and April 2022" and that "the At-Issue Traders realized $121,474,498.91 in profit." In short, Dr. Garibotti purports to claim that there were *397* separate pump-and-dump "episodes" that the Government will intend to elicit into evidence at trial. And is so doing, Dr. Garibotti identified thousands of trades divided into these "episodes." Each episode contains multiple data points across different date ranges and a varied Defendant pool (purportedly distilled from voluminous business records) that she interprets to be associated with the individual episode at issue. She also stated that she "received from the DOJ a CSV file containing records from the Atlas Trading Discord server containing over 2 million records from more than 6,000 different users. According

---

[7] *See* Fed. Rule of Evid. 803(6) and 902(11).

to her, there are 184,232 messages by the "At-Issue traders," approximately half during an "At-Issue Trading Episode." There are also thousands of twitter posts. Dr. Garibotti spent approximately 30 hours preparing her declaration, and her company, Analysis Group, racked up a bill of $156,000. But even with such an expenditure of funds, her declaration clearly states that her analysis *assumes* the falsity of each of these tens of thousands of statements. In other words, her 30 hours of work (and $156,000 bill) does not include the hundreds of hours it will take for Defendants to review these posts for their veracity, falsity, or neither.

These tweets and trades are the gravamen of the prosecution's case. In fact, the Government recently filed a "Notice of Intent to Admit Evidence Under Rule 404(b)" seeking to admit all of the 397 alleged pump and dumps as either intrinsic evidence of the conspiracy or, in the alternative, extrinsic evidence admissible pursuant to Rule 404(b). *See* ECF No. 319. The Defendants, obviously, will oppose the admission of this evidence. Accordingly, this issue as to the admissibility of 397 separate alleged pump and dumps will need to be heavily litigated prior to trial, as any admission of this evidence will be highly prejudicial to the defense. In short, now that these "episodes" have *finally* been revealed, Defendants will need months to review and investigate them in order to effectively confront and cross-examine this and other witnesses, as well as present alternative explanations for the content and context of the statements or the trading activity. And – *each* of the seven remaining Defendants must do this not only for his own actions, but also examine those of his alleged co-conspirators.[8] That the Joint Defendants analysis necessitates a continuance of at least six months is a facially reasonable considering that it took the Government more than six months to provide this information, although it is the purported basis of the $114 million figure alleged in the December 7, 2022, Indictment.

---

[8] Notably, the trade records of many defendants are incomplete and the subject of Defendant Constantinescu's pending motion. *See* ECF No. 286 and 322.

### C. Complexity Necessitates Continuance

Given the complex nature of this case a continuance of at least 180 days is warranted. As the Supreme Court has noted, "[t]he exclusion of delay resulting from an ends-of-justice continuance [under 18 U.S.C. § 3161(h)(7)] is the most open-ended type of exclusion recognized under the Act." *Zedner*, 547 U.S. at 508. The purpose of such an open-ended continuance is understood by the Court's recognition that "Congress clearly meant to give district judges a measure of flexibility in accommodating unusual, complex, and difficult cases." *Id*. The complex and novel nature of the allegations in the Indictment make clear that this case warrants the requested continuance.[9]

The granting of a continuance under these circumstances and the plain text of the Act does *not* violate any Defendant's speedy trial right, whereas a failure to continue this case *will* result in a violation of their 6th Amendment rights to effective assistance of counsel, confrontation, and to present a defense.

### CONCLUSION

For these reasons, the Joint Defendants respectfully request a continuance with respect to all deadlines included in the present scheduling orders of at least 180 days.

Respectfully submitted,

**HILDER & ASSOCIATES, P.C.**

/S/ *Q. Tate Williams*
Q. Tate Williams
Texas Bar No.: 24013760
Philip H. Hilder
Texas Bar No. 09620050
Stephanie K. McGuire
Texas Bar No. 11100520

---

[9] A number of defense counsel also have other serious cases set for trial in conflict with or abutting the current trial setting. Although each may prefer to advise the Court individually, a continuance may provide the flexibility and adequate preparation time so that all of the attorneys' clients may receive effective assistance of counsel.

819 Lovett Blvd.
Houston, Texas 77006
(713) 655-9111–telephone
(713) 655-9112–facsimile
philip@hilderlaw.com
tate@hilderlaw.com
stephanie@hilderlaw.com

Eric Samuel Rosen
Freedman Normand Friedland LLP
225 Franklin Street, 26th Floor
Boston, MA 02110
Tel: (617) 977-4163
erosen@fnf.law

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this pleading was served on all counsel of record via ECF contemporaneous with filing.

/s/ *Q. Tate Williams*
Q. Tate Williams

## CERTIFICATE OF CONFERENCE

On July 7-8, 2023, undersigned counsel communicated with Scott Armstrong, Assistant United States Attorney, by electronic mail who indicated the prosecution is OPPOSED to this Motion.

Counsel for remaining trial Defendants Edward Constantinescu, Perry "PJ" Matlock, Gary Deel, Stefan Hrvatin, and Tom Cooperman join in this motion. Mitchell Hennessey does not join the motion and wishes to rely on his right to speedy trial, which I anticipate will be explained in a responsive pleading.

/s/ *Q. Tate Williams*
Q. Tate Williams

9