UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>EDWARD CONSTANTINESCU,<br>PERRY "PJ" MATLOCK,<br>JOHN RYBARCZYK,<br>GARY DEEL,<br>STEFAN HRVATIN,<br>TOM COOPERMAN,<br>MITCHELL HENNESSEY,<br>DANIEL KNIGHT. | No. 4:22-CR-00612 |

## RYBARCZYK'S' RESPONSE TO HENNESSEY'S OPPOSED MOTION FOR SEVERANCE

Defendant, John Rybarczyk ("Rybarczyk") responds to Mitchell Hennessey's *Emergency Motion to Sever* (ECF No. 365) by joining in Mr. Hennessey's request for either a) a severance of Mr. Hennessey and a continuance of the trial for all other Defendants or, in the alternative, b) a continuance for all Defendants, including Mr. Hennessey. While Mr. Hennessey seeks a "short continuance" of this complex case should this Court not grant his severance, he does not define what "short" means. Accordingly, and to be more precise, Mr. Rybarczyk requests a continuance of at least 180 days pursuant to 18 U.S.C § 3161(h)(7)(B)(ii) and the 6th Amendment to the U.S. Constitution.

**INTRODUCTION**

As this Court recognized back in January, this is a complex case.[1] Since January, the Defendants have filed dozens of motions—many of which are *sub judice*—and the Government has produced more than a terabyte of discovery. Even at this late juncture, the Government continues to produce discovery. In short, to the extent that this case was "complex" in January, it is now extraordinarily complex. With that background in mind, if Mitchell Hennessey wants a separate trial, Rybarczyk consents to a severance of Mr. Hennessey, who can proceed to trial in October at his own peril. If the Court will not grant a severance, the trial should be continued as Hennessey alternatively requests.

The Government's long standing opposition to a continuance relies on the argument that a continuance "runs contrary to … the public's interest in a speedy trial on the merits." But this argument makes little sense. As the Sixth Amendment makes clear, there is a constitutional and public interest in a *fair trial*, where criminal defendants are given adequate time to investigate complex cases and prepare for them to be tried before juries of their peers. The complexity of this case and the 397 separate securities frauds it includes necessitate on constitutional and fairness principles a continuance of at least 180 days, which is almost equivalent to the amount of time the Government investigated it *prior* to the arrest of any Defendant.

Unknown to Defendants, the FBI and USAO began investigating Defendants last May, seven months before Indictment. Their teammates at the SEC began their investigation even earlier. Fairness (and the public interest) dictates that Defendants should have *at least* the same amount of time to consider the evidence as it took the Government to produce it so that they may

---

[1] This Court designated the case as complex on January 3, 2023. ECF No. 87. "[A] district court's certification that the criminal case is 'complex' tolls the Speedy Trial clock indefinitely." *See Gonzalez v. United States*, 2020 WL 1891877, at *1 (S.D. Tex. Apr. 15, 2020).

confront and cross-examine their accusers, including the expert, present a defense, and receive effective assistance of counsel. The public interest is better served if the trial is conducted *fairly* rather than completed quickly. A continuance of at least six months is reasonable under the circumstances.[2]

A. **These Prosecutors Began their Work in May, 2022, While Defendants Only Became Aware of Charges in December, 2022, and the Alleged Basis on June 15, 2023.**

Although this case was first Indicted on December 7, 2022, local FBI agents, in conjunction with the local U.S. Attorney's Office opened their investigation in May, 2022. ECF No. 1.[3] The end date in the Indictment reflects this, alleging that "[f]rom in or around January 2020 to in or around April 2022, the defendants profited at least approximately $114 million from their scheme." *Id.* at p. 2, ¶1. In other words, after at least seven months of an investigation, the Government had sufficient basis to twice persuade grand juries that defendants had made at least $114,000,000.00 in profits, through the "pump and dump" of particular stocks. Aside from the details relating to a handful of stocks in the Indictment, prosecutors only *began* to reveal the basis of the number grand jurors had relied on to Defendants on March 31, 2023, and then completely on June 15, 2023, more than a year after their investigation began. Yet, they

---

[2] In addition, a continuance of at least six months will result in significant saving of judicial resources. As of now, given the compressed time schedule, the defense has little opportunity to coordinate strategies in advance of the trial, likely resulting in numerous redundancies in cross-examinations, witness presentations, and jury addresses. This issue is particularly problematic given that the government has charged 397 separate "pump and dump" schemes, necessitating a trial that could last months. By granting a continuance and providing defense counsel with additional time to coordinate, this Court will likely save weeks of trial time.

[3] According to documents produced in discovery (Bates DOJ-PROD-0000192656 and DOJ-PROD-0000192790, available upon request), it appears that the FBI first sought permission to open a full investigation on May 16, 2022. The local agent requesting the investigation wrote that the case was referred by a DOJ Fraud Section Trial Attorney and that the local USAO agreed to support the investigation. A memo from a May 31, 2022, meeting between that FBI Special Agent, AUSA Armstrong, and several SEC lawyers reveals that the SEC investigation had "been open approximately one year" and that three "whistleblowers" had provided information.

would allow Defendants only a portion of that time to conduct their own investigation into this novel and highly complex case. A 180 day continuance is both fair and necessary.

**B.     The Government's Statutory Interest in Speedy Trial is Outweighed by Defendant's Constitutional Rights to Confrontation, Effective Assistance of Counsel and to Present a Defense.**

The Speedy Trial Act references the public's right to a speedy resolution of cases,[4] but it is only one consideration in the Act. The "public's interest" is a statutory creation outside the text of the VI$^{th}$ Amendment,[5] which enumerates Americans' rights and liberties in relation to their government, not the other way around. The public's interest in a speedy trial cannot overcome Defendants' constitutional rights to effective assistance of counsel, confrontation, and to present a defense. This is a matter of fundamental fairness which surely is in the "public interest" as well.

As the Supreme Court recognized in *Gideon v. Wainwright,* 372 U.S. 335, 344 (1963) the Government "spend[s] vast sums of money to establish machinery to try defendants accused of crime." The Government's contention that the Defendants are greater to or equal to itself in resources is unserious. *See* Response at 4. Defense counsel's function "is to make the adversarial testing process work in the particular case. *Strickland v. Washington,* 466 U.S. 668, 690-691 (1984). "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* "[A]n attorney must engage in a reasonable amount of pretrial investigation and 'at a minimum, . . . interview potential witnesses and . . .

---

[4] "… that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. 3161(h)(7)(A).

[5] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U. S. Const. amend VI.

make an independent investigation of the facts and circumstances in the case.'" *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994) (quoting *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985)).

The first page of both Indictments allege a $114 million profit by Defendants which is incorporated into the Count 1, Conspiracy to Commit Securities Fraud. *Id.* at p. 35 ¶115. Defendants began requesting the basis of this amount shortly after their arrest. They finally received it on June 15, 2023, as part of an expert designation identifying 397 separate "episodes" of "pump and dump" by Defendants. This was substantially more information than the list received on March 31, 2023, as it included the actual trades, communications, amounts, and purporting supported records.[6]

As the Government did in producing their disclosure, Defendants have been making their own diligent efforts to investigate these "episodes" to defend themselves. It is important to consider that the Government *has not, because it will not,* make the following commitments which may obviate the need for a continuance:

1) The Government will not commit to only relying on the stocks specifically identified in the Superseding Indictment in opening statements, witness testimony, trial exhibits, summary charts, or final argument at trial;

2) The Government will not commit to using only the stocks specifically identified in the Superseding Indictment as the basis of loss under the USSG at any sentencing;

3) The Government will not commit to using only the stocks specifically identified in the Superseding Indictment as the basis of restitution at any sentencing;

---

[6] The March 31, 2023, disclosure was an excel spreadsheet which parties filed as an exhibit to their pleadings. The June 15, 2023, expert disclosure was exponentially larger and included voluminous amounts of data and records far too large to file.

4) The Government will not commit to not using the proceeds from only the stocks specifically identified as a measure of forfeiture;

Unless and until the Government makes the above four commitments, it has no reasonable complaint with a request for a continuance. Recent events demonstrate no such commitments will be forthcoming.

On June 15, 2023, the prosecution designated the witness who identified the 397 episodes as a testifying expert. Then, on July 5, 2023, the Government gave written notice that it intends to admit evidence of these episodes at trial. ECF No. 319. Finally, the Government's 705 Exhibits disclosed on August 11, 2023, include at least 354 Excel Spreadsheets of trading data demonstrating it intends to introduce evidence of all during its case in chief. *See* ECF No. 351. These events confirm Defendants must be prepared to rebut *all* 397 alleged crimes.

Counsel's investigations must extend beyond simply cross-checking the expert report against other discovery materials. Defendants would be foolish, and their lawyers ineffective, to rely on their accusers' characterization of the facts and evidence without any additional investigation of their own present alternative evidence in their defense. Indeed, investigations thus far reveal that the Government's perspective (as disclosed) is myopic and that it is wrong about some of these episodes. The Government's analysis often relies on insufficient information (or pretends these events occurred in a vacuum) devoid of context, including other market forces affecting share price and Defendants' conduct which may provide an alternative (non-criminal) explanation for what occurred. Not all "episodes" have been reviewed, hence the necessity of a continuance.

A continuance under the Speedy Trial Act does *not* violate any Defendant's speedy trial right, whereas trial of this case as scheduled *will* result in a violation of their 6th Amendment rights to effective assistance of counsel, confrontation, and to present a defense.

## CONCLUSION

For these reasons, Rybarczyk respectfully requests a continuance with respect to all deadlines included in the present scheduling orders of at least 180 days.

Respectfully submitted,

**HILDER & ASSOCIATES, P.C.**

*/S/ Q. Tate Williams*
Q. Tate Williams
Texas Bar No.: 24013760
Philip H. Hilder
Texas Bar No. 09620050
Stephanie K. McGuire
Texas Bar No. 11100520
819 Lovett Blvd.
Houston, Texas 77006
(713) 655-9111–telephone
(713) 655-9112–facsimile
philip@hilderlaw.com
tate@hilderlaw.com
stephanie@hilderlaw.com

Eric Samuel Rosen
Dynamis LLP
225 Franklin Street, 26th Floor
Boston, MA 02110
Tel: (617) 802-9157
erosen@dynamisllp.com

ATTORNEYS FOR DEFENDANT
JOHN RYBARCZYK

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of this pleading was served on all counsel of record via ECF contemporaneous with filing.

                                            /s/ *Q. Tate Williams*
                                            Q. Tate Williams