UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| VS. | § | NO. 4:22-cr-00612-3 |
| | § | |
| **JOHN RYBARCZYK** | § | |

### RYBARCZYK'S REPLY
### TO UNITED STATES' RESPOSNE TO 2nd JOINT MOTION TO DISMISS

TO THE HONORABLE ANDREW HANEN, UNITED STATES DISTRICT JUDGE:

John Rybarczyk ("Rybarczyk"), Defendant, joined by Defendants Hrvatin, Matlock, Deel, and Cooperman respectfully reply to the "United States' Response in opposition to Defendant Rybarczyk's Second Joint Motion to Dismiss" (Dkt. 422) as follows:

*First*, this case is squarely within the recent Supreme Court decision in *Ciminelli* [1] because the allegations are, in essence, a "right to control" assets theory by another name.[2] In that regard, and contrary to the Government's assertions, the federal fraud statutes do not criminalize schemes to obtain *any* money or property by a Defendant. This is because money or property naturally results, at some point, from nearly every fraud scheme. In *Ciminelli,* as an example, the Petitioner

---

[1] *Ciminelli v. United States,* 598 U.S. ___, 143 S.Ct. 1121, 21 L. Ed.2d 294 (2023).

[2] That the government has not expressly called it a "right to control" theory in its pleadings is not dispositive. In *Nordlicht*, it was disputed whether the Government presented a "right-to-control" theory, but the Court found "either way, no reasonable jury could find beyond a reasonable doubt …except under a 'right-to-control' theory." *United States v. Nordlicht, United States v. Nordlicht, et al*., 16-cr-640-BMC, 2023 WL 4490615, 2023 U.S.Dist.LEXIS 119965 *16 (E.D.N.Y. Jul. 12, 2023). The District Court, there, granted a Rule 29 motion as to the wire fraud counts, because there was no intent to defraud the victims, who had only been deprived of information that could have altered their decision to tender the bonds at issue. Similar circumstances exist here.

1

"was convicted of federal wire fraud for his involvement in a scheme to rig the bid process for obtaining state-funded development projects…Ciminelli's construction company, LPCiminelli, paid Howe $100,000 to $180,000 each year to help it obtain state-funded jobs," as part of a massive $750 million government contract. *Id.* at 1122, 21 L. Ed.2d 296. The fact that funds would ultimately flow into *Ciminelli's* corporate coffers did *not* save the convictions in that case, as the object of that fraud was a state agency's "right to control" its assets through the deprivation of information necessary to make "discretionary economic decisions." *See Id.* at fn. 1.

Rather, controlling Supreme Court precedent makes clear that the "wire fraud statute thus prohibits only deceptive 'schemes to deprive [*the victim of*] money or property." *See Kelly v. United States*, 590 U.S. ----, 140 S. Ct. 1565, 1571 (2020) (*quoting McNally v. United States*, 483 U.S. 350, 358 (1987). The Superseding Indictment fatally does not allege that *any* Defendant deprived *any* individual victim of *any* money or property. *See* Dkt. 134. Instead, Defendants are accused of deceptively disseminating misleading information or omitting material information on social media platforms that deprived their audience of potential market participants the ability to make informed decisions about whether and at what price to purchase and sell securities the subject of those communications.[3] Indeed, the Government confirmed this as true in their filing at Dkt. 424 pages 8-10, where they stated that they are neither required to nor will prove that the Defendants' communications caused *any effect* on share price.

Put simply, obtaining money or property for Defendants themselves is insufficient to allege a crime. "Profits," which is what the Government has pled in the Superseding Indictment (*see,*

---

[3] Although Defendants previously cited numerous instances where this is apparent, the Court need look no further than the first page of the Superseding Indictment which alleges Rybarczyk et al, "engaged in a scheme to 'pump and dump' securities based on false and misleading information and material omissions about those securities … to induce other investors to buy the security and artificially drive up its price." Dkt. 134, at pp.1-2, ¶1.

2

*e.g.*, Dkt. 134 at 31, 42, 53, 62, 71, 81, 91, 100, 115), and believes are relevant for trial (Dkt. 424 at 9-10), are actually *irrelevant* at trial under *Kelly* and *Ciminelli*, as "profits" fail to demonstrate a scheme that deprived a *victim* of property. Indeed, if "profits" alone were the correct measure, the defendant in *Ciminelli* would have been readily convicted. Viewed correctly, the Government's case here is no different than the problematic theory in *Ciminelli* that "the defendant schemed to deprive a victim of potentially valuable economic information necessary to make discretionary economic decisions." Clearly, whether, when, and at what price to purchase a stock is a discretionary economic decision. According to the Government, Defendants schemed to deprive other market participants of potentially valuable economic information to exercise that discretion. That, pursuant to *Ciminelli*, is not a crime. See Ciminelli, at fn. 4 ("[T]he right to information necessary to make informed economic decisions, while perhaps useful for protecting and making use of one's property, has not itself traditionally been recognized as a property interest.").

Similarly, the Government's attempts to distinguish *Greenlaw* are unavailing. "[U]nder the fraud statutes, the proper question is 'whether the victims' property rights were affected by the misrepresentations.'" *United States v. Greenlaw*, 76 F.4th 304 at 330 (5th Cir. 2023) (quoting *United States v. McMillan,* 600 F.3d 434, 449 (5th Cir. 2010)). Intent to defraud requires "an intent to (1) deceive, and (2) cause some harm to result from the deceit.'"" *Id.* at 319. Harm to purported victims must result *from* the deceit. As noted, the Superseding Indictment fails to allege that any person was harmed by any particular deception or even link any change in price to the Defendants' alleged deceit, undermining any bare allegations of the intent to do so. *See Dkt.* 134. Market participants in this case (like those in the *Takhalov* case [4] cited by the Fifth Circuit in *Greenlaw*)

---

[4] *United States v. Takhalov*, 827 F.3d 1307, 1314 (11th Cir.), *as rev'd* (Oct. 3, 2016), *opinion modified on denial of reh'g*, 838 F.3d 1168 (11th Cir. 2016).

received what they are alleged to have been "lured" into (in the parlance of *Takhalov*) and contracted for—shares in a particular company trading freely on the open market—not necessarily shares purchased from the Defendants or even shares artificially inflated. The Government does *not even allege* that any identified victim purchased shares from any Defendant. Instead, it claims that they were deprived of accurate information that would have altered their decision about whether and what price to buy shares with their money (from whatever source) or sell that property subsequent to its purchase. As a result, the Superseding Indictment fails to allege a crime.

Alternatively, in the event the Court is inclined to deny the motion, Rybarczyk requests that the Court hold it in abeyance until the conclusion of the case for Rule 29 analysis, the stage at which several of the cited cases rendered the decisions relied upon.

## CONCLUSION

For the reasons set forth above, the Indictment must be dismissed or alternatively, the motion held in abeyance until the conclusion of the Government's case, as requested herein.

Respectfully submitted,

**HILDER & ASSOCIATES, P.C.**

/S/ *Q. Tate Williams*
Q. Tate Williams
Texas Bar No.: 24013760
Philip H. Hilder
Texas Bar No. 09620050
Stephanie K. McGuire
Texas Bar No. 11100520
819 Lovett Blvd.
Houston, Texas 77006
(713) 655-9111–telephone
(713) 655-9112–facsimile
philip@hilderlaw.com
tate@hilderlaw.com
stephanie@hilderlaw.com

4

Eric Samuel Rosen
Constantine Economides
Dynamis LLP
225 Franklin Street, 26th Floor
Boston, MA 02110
Tel: (617) 802-9157
erosen@dynamisllp.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2023, a true and correct copy of the above and foregoing reply brief was served on all counsel of record via ECF, certified mail, return receipt requested, facsimile, electronically, or hand delivery.

/s/ *Q. Tate Williams*
Q. Tate Williams