UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS. § | NO. 4:22-CR-612 |
| § | |
| EDWARD CONSTANTINESCU, *ET AL*. § | |

**DEFENDANT, JOHN RYBARCZYK'S MOTION TO COMPEL THE PRODUCTION OF TRADING RECORDS FROM TD AMERITRADE AND FOR SANCTIONS DUE TO TD AMERITRADE'S FAILURE TO COMPLY WITH THE JANUARY 12, 2024, SUBPOENA**

TO THE HONORABLE ANDREW S. HANEN, UNITED STATES DISTRICT JUDGE:

Defendant, John Rybarczyk ("Rybarczyk") moves this Court for an Order compelling TD Ameritrade to produce brokerage account statements and 1099 Tax forms and shows:

As this Court is aware, on January 12, 2024, this Court issued a subpoena to TD Ameritrade for the records of eight individuals who the Government may call as witnesses at the upcoming April 1, 2024 trial. *See* Exhibit A [redacted subpoena]. The records ordered by this Court to be produced are very clear. TD Ameritrade must produce "all trading records spanning the period from October 1, 2019 to June 1, 2022," and further, the "records should include, but are not limited to, all trading records (with date and time of trade) as well as 1099-B tax forms." *Id*. TD Ameritrade was ordered to comply with the subpoena by January 19, 2024.

TD Ameritrade has thus far failed to comply with the subpoena issued by this Court. Initially, TD Ameritrade, citing an obscure Texas banking law, balked at producing any records at all. Then, when provided with case law indicating that the law was clearly inapplicable, TD Ameritrade agreed to produce records. However, it was not until February 14, 2024, nearly a month

1

after the subpoena return was due, that TD Ameritrade produced *some* trading records. *See* Exhibit B [letter from the law firm of Ballard Spahr].

However, the records that TD Ameritrade did produce fell far short of what was commanded by the subpoena. In that regard, TD Ameritrade produced 1,078 separate PDFs, each of which captured a single trading day for a single individual. An example of one of the PDFs is attached hereto as Exhibit C. The records provided by TD Ameritrade are effectively worthless.

*First*, the records do not contain the time of the trade, which was specifically authorized by the subpoena. It is critical for defense counsel to know the time of a particular trade in order to juxtapose that trade with the times of various Tweets.

*Second*, the trading records were spread out over more than 1,000 PDFs, requiring counsel to spend hundreds of hours to line up trades in an attempt to discern when round-trip trades were made—meaning, when did a person buy securities and when did he sell those same securities. By producing just one day at a time per PDF, it is virtually impossible to do this.

*Third*, this problem of one day of trades per PDF is compounded by the fact that the records were produced in no discernable order. Bates TDA032828-TDA032829 (Exhibit C), as an example, are trading records for April 18, 2021, while the very next document is a trading record from April 28, 2021, and the one after that is a trading record from April 6, 2021; and,

*Fourth*, TD Ameritrade did not produce *any* 1099 forms, despite those being specifically listed in the subpoena.

*Fifth*, TD Ameritrade did not produce any brokerage account statements, even though the subpoena ordered the production of "all trading records." Account statements, which list out the various trades entered into each month, are obviously trading records ordered to be produced.

After reviewing this production, counsel went back to TD Ameritrade for the account statements. TD Ameritrade is represented by Ballard Spahr, one of the largest law firms in the United States. Counsel repeatedly asked TD Ameritrade's lawyers to produce the account statements as they were required to be produced by the subpoena. Indeed, it made no sense why TD Ameritrade produced more than 1,000 separate PDFs that contained single trading days in random order.

Counsel sent multiple emails in late February to Andrew Valencia, the lawyer at Ballard Spahr handling the production for TD Ameritrade. It was not until March 1, 2024, after multiple emails went unanswered, that Mr. Valencia responded (inaccurately) that the "subpoena requested trading records and that was exactly what TDA produced, satisfying the subpoena. We are working on getting account statements based on your secondary request and I expect that we can produce those next week[ ]." *See* Exhibit D [email chain]. Mr. Valencia neglected to note that the subpoena ordered the production of *all* trading records; not the random assortment of PDFs that TD Ameritrade produced. On March 8, 2024, counsel, having received nothing, again followed up with Mr. Valencia, noting that the subpoena commanded the production (nearly two months ago) of all trading records and 1099s, which would include the account statements. Counsel warned Mr. Valencia that he would have to file a motion to compel "early next week" if they were not produced. *Id*. Since that email, counsel has received no response from Mr. Valencia or any other lawyer at Ballard Spahr.

Accordingly, given that we are nearly at the eve of trial, Rybarczyk respectfully asks this Court to grant his motion to compel the production of account statements and 1099 tax forms, both of which were called for in the previously granted subpoena. These records should be provided by March 14, 2024. TD Ameritrade's attorneys have refused to engage on this issue, have promised

records and failed to deliver, and perhaps most importantly, they have produced over 1,000 PDFs in random order that will dramatically slow down counsel's questioning of the Government witnesses. It is unclear why TD Ameritrade did that—their customers obviously receive account statements and TD Ameritrade produced account statements to the Government. With trial just a few weeks away, counsel respectfully asks for this motion to be granted expeditiously.

Because TD Ameritrade has now had two months to respond to the subpoena—and has thwarted counsel at every step of the way—counsel requests that TD Ameritrade be sanctioned and ordered to pay all costs and attorneys' fees associated with bringing this motion before the Court.

Respectfully submitted,

**HILDER & ASSOCIATES, P.C.**

/S/ *Q. Tate Williams*
Q. Tate Williams
Texas Bar No.: 24013760
Philip H. Hilder
Texas Bar No. 09620050
819 Lovett Blvd.
Houston, Texas 77006
(713) 655-9111–telephone
(713) 655-9112–facsimile
philip@hilderlaw.com
tate@hilderlaw.com

**DYNAMIS LLP**

/s/ *Eric S. Rosen*
Eric Samuel Rosen
Constantine Economides
225 Franklin Street, 26th Floor
Boston, MA 02110
Tel: (617) 802-9157
erosen@dynamisllp.com

ATTORNEYS FOR DEFENDANT
JOHN RYBARCZYK

4

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 11, 2024, a true and correct copy of the above and foregoing was served on all counsel of record via ECF, certified mail, return receipt requested, facsimile, electronically, or hand delivery. Additionally, a copy of this motion and the attached exhibits was served on Mr. Andrew Valencia of Ballard Spahr (counsel for TD Ameritrade) via email.

                                                        */s/ Q. Tate Williams*
                                                        Q. Tate Williams